UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOELLE EPPS-MILTON,

     Plaintiff,

v.

GENESEE INTERMEDIATE SCHOOL
DISTRICT, AIMEE PHILLIPS, GLORIA
BOURDON, LISA HAGEL, GRETCHEN
STETLER, MICHAEL MOORMAN,
MARY BEHM, MELINDA MCGRAW,
and GISD BOARD OF EDUCATION,

     Defendants.

Case No. 14-11861

Hon. Patrick J. Duggan

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Noelle Epps-Milton, a *pro se* litigant, initiated this employment discrimination action against her employer, the Genesee Intermediate School District ("Genesee ISD"), as well as seven Genesee ISD employees (the "Individual Defendants") – each of whom is sued in their individual and official capacities – and the Genesee ISD Board of Education (collectively, "Defendants") alleging various transgressions of both state and federal law. Presently before the Court is Defendants' motion for judgment on the pleadings, filed pursuant to

Federal Rule of Civil Procedure 12(c).[1]  Plaintiff declined to respond to the motion.
Having determined that oral argument would not significantly aid the decisional
process, the Court dispensed with oral argument pursuant to Eastern District of
Michigan Local Rule 7.1(f)(2).

For the reasons stated herein, the Court grants Defendants' Motion.  As a
result of Defendants' failure to seek dismissal of Plaintiff's claim of race
discrimination pursuant to 42 U.S.C. § 1981, as well as this Court's belief that
there are sufficient factual allegations to withstand dismissal, this claim remains.

## I.     BACKGROUND

### A.     Factual Allegations

Plaintiff, an African American woman, began working for Genesee ISD as a
Club Leader on April 9, 2009.  (Am. Compl. ¶¶ 1-2.)  Sometime after this date,
non-party Marian Keenan approached Plaintiff and informed her that Genesee ISD
"was looking for African Americans to place in higher-paying positions for
appearances of diversity."  (*Id.* ¶ 3.)  Defendant Gloria Bourdon, Director of
Health, Safety and Nutrition Services at Genesee ISD "directed" Plaintiff "to apply
for [an open] Nutrition Advocate position, which[,] based upon the job description,
[Plaintiff] was not qualified to fill."  (*Id.* ¶ 4.)  "Bourdon indicated that [Plaintiff]
would be given the job solely because she is African American."  (*Id.* ¶ 6.)  On

---

[1] Defendants have improperly labeled this motion as a motion to dismiss.

October 1, 2009, Plaintiff began working forty hours per week as a Nutrition Advocate and Bourdon became Plaintiff's supervisor.  (*Id.* ¶ 9.)

The following October, an issue arose with Plaintiff's family.  Specifically, while at school on October 13, 2010, one of her two "mentally disabled" sons attempted to commit suicide and required medical attention.  (*Id.* ¶¶ 13-14.)  By this date, Plaintiff had been working as a Nutrition Advocate for just over one year, estimating that she worked between "2,120 - 2,160 hours."  (*Id.* ¶ 12.)  On October 14, 2010, Plaintiff requested a temporary reduction in hours to enable her to care for her child, and Genesee ISD, acting through Bourdon, honored this request and permitted Plaintiff to work thirty, as opposed to forty, hours per week.  (*Id.* ¶¶ 16-17.)  Plaintiff apparently worked "the reduced 10 hours from home without pay or compensation."  (*Id.* ¶ 18.)

On November 9, 2010, Plaintiff emailed Bourdon asking that her hours be restored.  (*Id.* ¶ 22; 11/9/10 Email, Am. Compl. Ex. B.)  Bourdon responded to Plaintiff's email on November 10, 2010, informing Plaintiff that the hours were no longer available.  (Am. Compl. ¶ 24; 11/10/10 Email, Am. Compl. Ex. B.)  However, on November 16, 2010, Genesee ISD posted a vacancy notice indicating that there were two part-time Nutrition Advocate positions available, each position for twenty hours per week.  (Am. Compl. ¶ 26; Vacancy Notice, Am. Compl. Ex. C.)  These two positions were subsequently condensed into one full-time position

(forty hours per week), and a Caucasian male was hired. (Am. Compl. ¶ 34.) Soon thereafter, in mid-February 2011, a Caucasian female was hired to fill an "unannounced" full-time Nutrition Advocate position. (*Id.* ¶ 35.)

On February 16, 2011 – the day after the white woman was hired – Bourdon evaluated a presentation Plaintiff was giving at a local elementary school. (*Id.* ¶ 36.) This was apparently the first time a presentation by a Nutrition Advocate was evaluated. (*Id.* ¶ 37.) On February 23, 2011, Boudon sent a memorandum to Plaintiff outlining her concerns with Plaintiff's "lack of performance and unprofessional behavior." (2/23/11 Mem., Am. Compl. Ex. D.) The memorandum sets forth several problems Bourdon observed at the event, in addition to issues regarding Plaintiff misreporting hours and Plaintiff's work schedule. (*Id.*) Plaintiff responded to the allegations in writing prior to the February 28, 2011 meeting to discuss the contents of the memorandum. (Am. Compl. Ex. E.) In attendance at this meeting were Plaintiff, Bourdon, Defendant Melissa McGraw, a human resources administrator for Genesee ISD, and Defendant Gretchen Stetler, a team leader for nutrition and Plaintiff's direct supervisor. (Am. Compl. ¶ 40.) It is unclear what transpired at this meeting.

On April 20, 2011, Bourdon "verbally reprimanded" Plaintiff "for conducting a presentation [that] Bourdon had approved instead of attending a professional development meeting in Lansing." (*Id.* ¶ 42.) The same day, Stetler

complained about Plaintiff to Bourdon, indicating that Plaintiff had returned dishes from a nutrition seminar without rinsing them. (4/20/11 Mem., Am. Compl. Ex. F.) According to Plaintiff, her job duties did not including washing dishes. Stetler's memorandum is mindful of Plaintiff's concern, but notes that Nutrition Advocates are expected to rinse the dishes to remove food particles.

On April 21, 2011, Bourdon cancelled a scheduled presentation that Plaintiff was supposed to give at a local school and did not notify Plaintiff of the cancellation. (Am. Compl. ¶ 45-46.) Bourdon never cancelled any presentations scheduled for Caucasian Nutrition Advocates. (*Id.* ¶ 46.) Plaintiff indicates that she met with Bourdon after learning of the cancellation and that Bourdon told Plaintiff that "she could work . . . in the kitchen . . . counting the napkins, forks, and spoons." (*Id.* ¶ 49.) Such duties were not the responsibility of a Nutrition Advocate, but rather of the kitchen staff. (*Id.*)

As a result of these incidents, Plaintiff "reported harassment and a hostile work environment" to Defendant Lisa Hagel, the Genesee ISD Superintendent, on April 25, 2011 and requested a meeting. (*Id.* ¶ 51; Am. Comp. Ex. G.) Hagel declined to meet with Plaintiff, indicating that Defendant Mary Behm, the Assistant Superintendent, was the individual Plaintiff should contact regarding a meeting. (Am. Compl. ¶ 52.)

On April 26, 2011, Plaintiff met with human resources "regarding additional false allegations instigated against her to justify termination of her employment." (*Id.* ¶ 54.)  Following this meeting, which was purportedly to discuss Plaintiff's performance issues from February through April 2011, Plaintiff was placed on an "Action Plan."  (*Id.* ¶ 55; Action Plan, Am. Compl. Ex. I.)  This action plan set forth a list of expectations Plaintiff was required to meet going forward.  One instruction provides that Plaintiff will rinse all dishes and utensils before returning them and that Plaintiff "will be expected to wash dishes for future events as needed."  However, "[n]o Caucasian Nutrition Advocate was required to wash the dishes."  (Am. Compl. ¶ 57.)  Another instruction directed Plaintiff to bring concerns about department management directly to Bourdon instead of speaking negatively about the management elsewhere.

On April 28, 2011, Plaintiff informed Hagel that Behm disciplined her because of her report of harassment to Hagel and that Plaintiff feared retaliation. (*Id.* ¶ 61; Am. Compl. Ex. J.)

Plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights ("MDCR") in June 2011.[2]  Plaintiff voluntarily withdrew this charge.

On October 7, 2011, Plaintiff alleges that some sort of "sabotage" occurred because she turned in "task sheets" on time but that they somehow disappeared

---

[2] The filing of a charge of discrimination with the MDCR is equivalent to filing with the Equal Employment Opportunity Commission ("EEOC").

from Bourdon's office.  (Am. Compl. ¶ 63.)  Plaintiff was "disciplined for the task sheets not being timely presented."  (*Id.*)

Because of the emotional stress caused by what Plaintiff repeatedly refers to as a hostile work environment, she requested FMLA leave on October 27, 2011. (*Id.* ¶ 63.)  On November 10, 2011, Plaintiff was notified that Defendant Michael Moorman, the Deputy Superintendent, determined that Plaintiff was not eligible for FMLA leave.  (*Id.* ¶ 66.)  Plaintiff explains that this ineligibility determination was made because "due to the reduction to 30 hours per week," Plaintiff "had not worked the required 1,250 hours to qualify for FMLA leave[.]"  (*Id.* ¶ 67.)

On December 9, 2011, Plaintiff filed a second charge of discrimination with the MDCR.  (Defs.' Mot. Ex. C.)  In the charge, Plaintiff complained of race discrimination, unequal wages, retaliation, and denial of FMLA leave.  (*Id.*) Plaintiff alleges that she received a right-to-sue letter in February 2014.[3]

**B.   Legal Proceedings**

Plaintiff filed the present action on May 9, 2014.  On May 15, 2014, after a preliminary evaluation of Plaintiff's Complaint, the Court ordered Plaintiff to file an amended complaint that complied with Federal Rule of Civil Procedure 8. Plaintiff filed an amended complaint on June 2, 2014.

---

[3] Having concluded the factual recitation gleaned from Plaintiff's pleading, the Court notes that Defendant Aimee Phillips is never identified or mentioned. Further, at least at the time Plaintiff filed her second charge of discrimination, she was still employed as a Nutrition Advocate at Genesee ISD.

Plaintiff's Amended Complaint coversheet indicates that Plaintiff complains of violations of 42 U.S.C. §§ 1981, 1985, and 1986, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, the Lilly Ledbetter Fair Pay Act (the "Fair Pay Act"), 42 U.S.C. § 2000e-5(e)(3)(A), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Michigan Compiled Laws § 37.2101, *et seq.*  Plaintiff's pleading also contains a 42 U.S.C. § 1983 claim for a First Amendment violation.

Defendants answered the Amended Complaint on June 24, 2014, and filed the motion before the Court on August 11, 2014.  Plaintiff did not file a response.

## II.    GOVERNING LEGAL STANDARD

Federal courts review motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) using the standards applicable to motions filed under Rule 12(b)(6).  *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 846 (6th Cir. 2012).  Though litigants employ these procedural mechanisms at different stages of the proceedings, the purpose of both motions is to test the legal sufficiency of a plaintiff's pleadings.  Thus, as with Rule 12(b)(6) motions, a Rule 12(c) motion allows a court to make an assessment as to whether a plaintiff has stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

8

As articulated by the Supreme Court of the United States, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)).  This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1965.   Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

9

Compared to formal pleadings drafted by lawyers, a generally less stringent standard is applied when construing the allegations pleaded in a *pro se* complaint.  *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (reaffirming rule of more liberal construction of *pro se* complaints less than two weeks after issuing *Twombly*).  The leniency with which courts construe *pro se* plaintiffs' complaints, however, does not abrogate the basic pleading requirements designed to ensure that courts do "not have to guess at the nature of the claim asserted."  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006) (explaining that courts evaluating a *pro se* plaintiff's complaint are "not require[d] to either guess the nature of or create a litigant's claim").

## III.   ANALYSIS

Given the multiplicity of claims asserted against Defendants, as well as the lack of individually-numbered counts in Plaintiff's pleading, the Court addresses the employment discrimination claims before turning to Plaintiff's other civil rights claims.  Finally, the Court analyzes Plaintiff's FLSA and FMLA claims.

### A.   ADA Claim – Disability Discrimination

Plaintiff seeks relief for a violation of the ADA, which prohibits covered employers from discriminating against a "qualified individual on the basis of

10

disability" with regard to hiring, advancement, training, termination, and "other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  *Id.* § 12111(8). Despite a searching review of Plaintiff's Amended Complaint, the Court is unable to ascertain the basis for Plaintiff's ADA claim, as Plaintiff does not allege that she has a disability or that Defendants regarded her as having one.

Further, as Defendants point out, Plaintiff failed to exhaust her administrative remedies with respect to the ADA claim prior to instituting the present action.[4]  Plaintiff filed two charges of discrimination with the MDCR, neither of which contained a disability discrimination claim.  Because exhaustion of administrative remedies is a condition precedent to bringing a claim under the ADA in federal court, *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000), Plaintiff's claim of disability discrimination must be dismissed.

---

[4] Defendants repeatedly cite *Peete v. American Standard Graphic*, 885 F.2d 331 (6th Cir. 1989) for the proposition that a plaintiff seeking to state an ADA claim must first properly exhaust administrative remedies.  *Peete* involves the amount of time a plaintiff has to file a lawsuit after receiving a right to sue letter from the EEOC, not the necessity of filing with the EEOC in the first instance.

**B.    Race Discrimination Claims**

Plaintiff's Amended Complaint raises race discrimination claims under a variety of statutes (the ELCRA, Title VII, and 42 U.S.C. § 1981) and theories of liability (e.g., race discrimination and retaliation).

**1.    *Employment Discrimination Statutes***

Plaintiff asserts that Defendants discriminated against her with respect to the terms and conditions of her employment on account of her race, in violation of both the ELCRA and Title VII.  Defendants seek dismissal, arguing that: (1) Plaintiff cannot establish a prima facie case of discrimination; (2) the Individual Defendants are not subject to liability under Title VII; and (3) Plaintiff is not in possession of a "right to sue letter" from the EEOC and is therefore precluded from filing suit.  The Court need not address these arguments, as Plaintiff's claims of racial discrimination under both statutes are time-barred by the respective statutes of limitations.[5]

---

[5] Although the Court will not delve too deeply into Defendants' arguments in support of dismissal, the Court believes it is necessary to correct what appears to be a very serious misapprehension presented in Defendants' moving papers. Specifically, Defendants' suggestion that this Court import the prima facie case framework – a framework typically reserved for summary judgment motions pursuant to Federal Rule of Civil Procedure 56 – into federal pleading requirements is contrary to established precedent from the Supreme Court of the United States as well as the United States Court of Appeals for the Sixth Circuit. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012).  In *Swierkiewicz v. Sorema*, the Supreme Court unanimously held that the prima facie case under *McDonnell Douglas* in an evidentiary standard, not a pleading requirement.  534

a.     *Plaintiff's Claims of Race Discrimination under the ELCRA*

An employment discrimination claim brought pursuant to the ELCRA must be brought within three years from the date of injury. *Magee v. DaimlerChrysler Corp.*, 472 Mich. 108, 113, 693 N.W.2d 166, 168 (2005) (citing Mich. Comp. Laws § 600.5805(10)). The date of injury for purposes of determining the commencement of the limitations period is the date of alleged wrongdoing. *Joliet v. Pitoniak*, 475 Mich. 30, 40-41, 715 N.W.2d 60, 67 (2006) (citation omitted).

Plaintiff instituted the present civil action on May 9, 2014, meaning that unlawful conduct occurring before May 9, 2011 is time-barred by the ELCRA statute. Because the racially discriminatory acts occurred before this date, the Court dismisses Plaintiff's ELCRA claims.

---

U.S. 506, 510, 122 S. Ct. 992, 997 (2002). In doing so, the Court overruled Sixth Circuit precedent to the contrary. *Id.* at 510 n.2, 122 S. Ct. 996 n.2 (noting that the Sixth Circuit required a civil rights complainant to allege facts in support of each element of a prima facie case and citing *Jackson v. Columbus*, 194 F.3d 737, 751 (6th Cir. 1999)).

> As the Sixth Circuit has explained:
>
> The Supreme Court's subsequent decisions in *Twombly* and *Iqbal* did not alter its holding in *Swierkiewicz*. *Twombly* distinguished *Swierkiewicz*, explaining that the prior case "did not change the law of pleading," but simply reemphasized that application of the *McDonnell Douglas* prima facie case at the pleading stage "was contrary to the Federal Rules' structure of liberal pleading requirements."

*Keys*, 684 F.3d at 609 (quotation omitted).

13

>       b.      *Plaintiff's Claims of Race Discrimination under Title VII*

To withstand Defendants' Motion, Plaintiff's Amended Complaint must allege sufficient "factual content" from which this Court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, 129 S. Ct. at 1950, that Defendants "discriminate[d] against [Plaintiff] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race," 42 U.S.C. § 2000e-2(a)(1).

One fair reading of the Amended Complaint suggests that Plaintiff is claiming that Bourdon unlawfully discriminated against Plaintiff in connection with Plaintiff's request to reinstate her hours in November 2010.  (Am. Compl. ¶ 24.)  Although Boudon indicated that the hours "were no longer available[,]" less than one week later, two part-time Nutrition Advocate positions were posted "with up to 20-hours per week available." (*Id.* ¶¶ 24, 26.)  Ultimately, these positions were consolidated into one full-time position, and a white male was hired.  (*Id.* ¶ 34.)  The following month a white female was hired to fill a full-time "unannounced Nutrition Advocate position[.]"  (*Id.* ¶ 35.)  Although Plaintiff does not allege that she applied for the open Nutrition Advocate positions, she does allege that she "was not hired for either of these two available positions[.]"  (*Id.* ¶ 27.)  Under this reading of Plaintiff's pleading, it appears that she is alleging that

Bourdon declined to reinstate her hours because of her race.  There is, however, a timeliness issue with this claim.

In Michigan, a plaintiff seeking redress for a violation of Title VII must file a charge of discrimination with the MDCR within 300 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1).  If a claimant does not file a charge within this period, the claim is administratively barred.  Here, Plaintiff filed her second charge of discrimination on December 9, 2011, meaning that unlawful conduct occurring before February 13, 2011 falls outside of the 300-day period set forth in Title VII.  Here, Plaintiff alleges that Bourdon refused to reinstate Plaintiff's hours on account of her race on November 10, 2010, which is outside of the 300-day window.  This alone would normally justify dismissal, however, Plaintiff's Amended Complaint coversheet indicates a claim arising under the Fair Pay Act, codified at 42 U.S.C. § 2000e-5(e)(3)(A) and signed into law on January 29, 2009.[6]  If Plaintiff has stated a viable claim under the Fair Pay Act, the timelines rules differ and so too does this Court's analysis of her Title VII claims.

The Fair Pay Act amended Title VII by adding the following:

---

[6] Defendants seek dismissal of Plaintiff's Fair Pay Act claim on the basis that it does not constitute a distinct cause of action.  While this is indeed accurate, Defendants do not seem to recognize the import of Plaintiff's Fair Pay Act claim. *See, e.g.*, *Dixon v. Univ. of Toledo*, 638 F. Supp. 2d 847, 851 (N.D. Ohio 2009) (explaining that the Fair Pay Act does not create an independently cognizable claim but rather clarifies that a discriminatory compensation decision or other practice that is unlawful under Title VII occurs each time compensation is paid pursuant to the discriminatory compensation decision or other practice).

15

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or practice.

42 U.S.C. § 2000e-5(e)(3)(A). "Thus, pursuant to the [Fair Pay Act], each paycheck that stems from a discriminatory compensation decision or pay structure is a tainted, independent employment-action that commences the administrative statute of limitations." *Noel v. The Boeing Co.*, 622 F.3d 266, 271 (3d Cir. 2010).

As framed under the Fair Pay Act, it appears that Plaintiff is arguing that Bourdon's discriminatory employment action (the refusal to reinstate Plaintiff's hours) created a situation in which Plaintiff worked as many hours as her white counterparts but received less by way of monetary compensation. In other words, Bourdon's racially-motivated denial of Plaintiff's request to have her hours reinstated resulted in a compensation differential between Plaintiff, an African American, and her Caucasian counterparts. (*See generally* 12/9/11 Charge of Discrimination, Defs.' Mot. Ex. C.) This raises the issue of whether the Fair Pay Act renders Plaintiff's otherwise untimely Title VII charge timely, thereby resurrecting her underlying Title VII claim that she was discriminated against with respect to the terms and conditions of her employment because of her race. In other words, the Court must determine whether each paycheck Plaintiff received

16

during the pertinent time period caused the administrative clock to begin ticking anew.

Having carefully reviewed the allegations in Plaintiff's pleading, the Court is unable to conclude that Plaintiff has stated a viable claim.  This is because Plaintiff's factual allegations focus on the discrete act of Bourdon's refusal to reinstate Plaintiff's hours, not a discriminatory compensation decision.[7]  That the alleged discriminatory act negatively impacted Plaintiff's hours (and thus created an income disparity between Plaintiff and the white Nutrition Advocates who worked forty hours per week), does not transform the discrete discriminatory act into a discriminatory compensation decision.  The language of the Fair Pay Act supports this interpretation, as the Act expressly confines its scope to discriminatory compensation decisions and, by implication, does not cover other discrete employment actions.  *Cf. Noel*, 622 F.3d at 273-74 (parsing the language of the Fair Pay Act and discussing the dichotomy between compensation-related claims and failure-to-promote claims).

> ### d.    *Plaintiff's Retaliation Claims*

Title VII prohibits retaliation against employees who complain about discrimination.  42 U.S.C. § 2000e-3(a).  Plaintiff alleges that Defendants

---

[7] This conclusion is warranted on the basis that Plaintiff does not allege any new discriminatory acts; rather, she merely alleges continuing consequences of discrete discriminatory acts the limitations period for which has expired.

17

retaliated against her by paying her less than her white counterparts after she engaged in the protected activity of filing a charge of discrimination in May 2011.[8]

In her second charge of discrimination, filed on December 9, 2011, Plaintiff complains that she earned unequal wages as compared to her white counterparts and that this wage disparity was the result of Defendants retaliating against her for filing the first charge of discrimination in May 2011.  However, the discrete act causing the alleged wage differential (Bourdon denying Plaintiff's request for a restoration of hours) occurred in November 2010, approximately six months before Plaintiff filed her first charge of discrimination with the MDCR.

Because of the timing of events, it is not possible there is a causal relationship between the wage disparity and the protected conduct.  As such, the Court dismisses Plaintiff's retaliation claim with prejudice.

> e.   *Summary*

Plaintiff's race discrimination claims under the ELCRA and Title VII are untimely, and the Court dismisses these claims on this basis.  Plaintiff's claim of retaliation is untenable, and is also subject to dismissal.

## 2.   *Plaintiff's § 1981 Claim*

Plaintiff's Amended Complaint coversheet indicates that she is making a claim under 42 U.S.C. § 1981.  Defendants do not address this claim.

---

[8] The May 2011 charge of discrimination was later voluntarily withdrawn.

18

In relevant part, § 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens[.]" *Id.* § 1981(a).  The statute defines the right "to make and enforce contracts" to "include[] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).  The statute explicitly provides that its enumerated rights are protected from interference by both state and private actors. *Id.* § 1981(c).  Thus, to allege a viable claim under the statute, a plaintiff must allege "that the defendant intentionally discriminated against h[er] on the basis of race and that the discriminatory conduct abridged the rights provided for by the statute." *Grain v. Trinity Health*, 431 F. App'x 434, 449 (6th Cir. 2011) (citation omitted).

A four-year statute of limitations applies to claims made pursuant to § 1981. *Id.* (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-84, 124 S. Ct. 1836 (2004) and 28 U.S.C. § 1658).  Thus, any acts occurring between March 9, 2010 and March 9, 2014 (when Plaintiff filed this lawsuit) are actionable.

While the bounds of Plaintiff's claim are not entirely clear, the Court believes that taking Plaintiff's allegations as true, she has stated a viable race discrimination claim under § 1981.

**C.     First Amendment**

19

Plaintiff, employing the statutory vehicle of 42 U.S.C. § 1983, endeavors to state a claim for infringement of her First Amendment right to freedom of speech. [9] Plaintiff asserts that this right was infringed by the "action plan" devised by Bourdon and McGraw in April 2011, specifically the provision that Plaintiff "will not" make "[n]egative comments . . . regarding management of the department. Concerns will be shared privately with Mrs. Bourdon."  (Action Plan; Am. Compl. ¶¶ 55, 58-60.)  In answering the Amended Complaint, Defendants set forth several affirmative defenses to this claim.

In order to prevail on a § 1983 claim, a plaintiff must establish: "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." [10]  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010) (quotation omitted).   Although the restriction contained in the action plan did restrict Plaintiff's speech, and although Genesee ISD is indisputably a governmental entity for purposes of § 1983's second prong, these facts alone are not dispositive as Genesee ISD, acting as an employer, may permissibly restrict employee speech in certain situations.  The Supreme Court has

---

[9] Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000).

[10] Federal courts consider actions "under color of law" as the equivalent of "state action" under the Fourteenth Amendment. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S. Ct. 2764, 2769-70 (1982); *see also West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988).

specifically addressed the scope of a public employees' free speech rights vis-à-vis his or her employer.  *See, e.g.*, *Pickering v. Bd. of Educ.*, 391 U.S. 563, 391 S. Ct. 1731 (1968); *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S. Ct. 2891, 2897 (1987) (recognizing "the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment").  *Pickering* and its progeny stand for the proposition that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 1958 (2006) (citations omitted).  "The threshold question in" analyzing a public employee's free speech claim is therefore "whether [that employee's] speech may be 'fairly characterized as constituting speech on a matter of public concern.'"  *Rankin*, 483 U.S. at 384, 107 S. Ct. at 2897 (quoting *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983)).[11]

There is no indication from the face of Plaintiff's Amended Complaint that Genesee ISD, acting through its agents, restricted Plaintiff from speaking as a

---

[11] As the Supreme Court reiterated in *Rankin*, "[e]ven where a public employee's speech does not touch upon a matter of public concern, that speech is not 'totally beyond the protection of the First Amendment,' . . . but 'absent the most unusual circumstances a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.'"  *Rankin*, 483 U.S. at 386 n.7, 107 S. Ct. at 2898 n.7 (quoting *Connick*, 461 U.S. at 147, 103 S. Ct. at 1690); *see also Connick*, 461 U.S. at 143, 103 S. Ct. at 1688 (noting the "common-sense realization that government offices could not function if every employment decision became a constitutional matter").

citizen on matters of public concern.  Rather, considering the context of the action

plan and the circumstances surrounding its creation, it appears that the speech

restriction aimed to curtail Plaintiff's public disparagement of the management of

her department.  There is simply nothing alleged that permits this Court to make

the reasonable inference that Plaintiff was voicing opinions on matters of public

concern or otherwise weighing in on a topic of public debate.  For this reason, the

Court concludes that the action plan, executed by Genesee ISD in its capacity as an

employer, did not impermissibly interfere with Plaintiff's First Amendment rights.

*Connick*, 461 U.S. at 147, 103 S. Ct. at 1690 ("[A]bsent the most unusual

circumstances a federal court is not the appropriate forum in which to review the

wisdom of a personnel decision taken by a public agency allegedly in reaction to

the employee's behavior.").

Accordingly, Plaintiff's First Amendment claim is dismissed with prejudice

for failure to state a claim upon which relief can be granted.

**D.    Claims Arising Under Sections 1985 and 1986**

Plaintiff alleges that Defendants violated 42 U.S.C. §§ 1985 and 1986 by

conspiring to deprive her of her civil rights.  Section 1985 prohibits conspiracies

"for the purpose of depriving either directly or indirectly, any person or class of

persons of the equal protection of the laws, or of equal privileges and immunities

under the laws," *id.* § 1985(3), while § 1986 creates liability for people who

22

"neglect[] or refuse[]" to prevent such conspiracies, *id.* § 1986. Although not entirely clear whether Plaintiff predicates these claims upon her First Amendment § 1983 claim or upon her § 1981 claim, these claims are subject to dismissal.

Defendants argue, and the Court agrees, that even if Plaintiff had stated a viable § 1983 claim, Plaintiff's § 1985 claim is precluded by the "intracorporate conspiracy doctrine." This doctrine provides:

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). Although not developed in the civil rights context, the Sixth Circuit in *Hull* held that the "intracorporate conspiracy doctrine applies to claims brought under sections 1985(2) and (3)." *Estate of Smithers v. City of Flint*, 602 F.3d 758, 765 n.4 (6th Cir. 2010).[12]

Whatever the substantive basis for Plaintiff's conspiracy theory, she alleges the existence of a conspiracy between Genesee ISD, the Board of Education, and seven individuals (the school district superintendent and several administrators, among others), all of whom are employees or agents of the school district and/or

---

[12] In *Smithers*, the Sixth Circuit noted a circuit split on the issue of whether the intracorporate conspiracy doctrine applies to § 1985 claims, indicating that the Supreme Court "has not yet acted to resolve it." 602 F.3d at 765 n.4.

the board of education.  The named Defendants are therefore, in essence, a single entity.  By virtue of this legal fiction, Defendants were incapable of conspiring, as a conspiracy requires two persons (or entities), at minimum.  Irrespective of the underlying basis for the claim, then, the intracorporate conspiracy doctrine is dispositive of its viability.

Accordingly, Plaintiff fails to state a viable claim of conspiracy under § 1985 and Defendants are entitled to dismissal with prejudice.  *Hull*, 926 F.2d at 510 (dismissing § 1985 conspiracy claim against various school officials on the basis of the intra-corporate conspiracy doctrine).

Plaintiff's "inability to state a claim for conspiracy under § 1985 is . . . fatal" to her § 1986 claim for failure to prevent the alleged § 1985 infractions.  Section 1985 liability is a predicate to § 1986 liability, . . . and so a § 1986 claim must be dismissed when no § 1985 liability is successfully alleged[.]"  *O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 412, 426-27 (S.D.N.Y. 2004) (internal citations omitted); *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980) ("Section 1986 is designed to punish those who aid and abet violations of § 1985.  We find no violation of § 1985.  Accordingly, there can be no violation of § 1986.").

**E.     FLSA Claim**

Plaintiff's Amended Complaint also seeks to state a claim for a purported FLSA violation.  The basis for such a claim, however, is entirely unclear.  From

24

what the Court is able to glean from the allegations set forth in Plaintiff's pleading, Plaintiff seeks compensation for work she performed from home during the period she requested a reduction in hours to care for her family.  Because Plaintiff does not allege that she ever worked a workweek in excess of forty hours,[13] it appears that Plaintiff alleges a violation of the FLSA's minimum wage provision, codified at 29 U.S.C. § 206(a)(1)(C).  Plaintiff does not, however, allege what her salary was, whether or not she was paid hourly and, if so, that her pay was less than the statutory minimum wage of "7.25 an hour[,]" or whether or not she qualifies as exempt under the FLSA.  Simply stated, there are no factual allegations permitting this Court to infer that Defendants violated any provision of the FLSA.

Even if there were sufficient factual allegations, the FLSA generally provides a two-year statute of limitations, although the statute does contain a three-year statute of limitations for willful violations.[14]  Assuming, for purposes of this

_____

[13] Plaintiff alleges that she requested a reduction in hours from forty to thirty hours per week.  She also alleges that she continued to work these ten hours from home and that she was not compensated for them.  (Am. Compl. ¶¶ 16, 18, 27.)

[14] Title 29 U.S.C. § 255 provides, in pertinent part:

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act of 1938 . . .

(a) if the cause of action accrues on or after May 14, 1947-may be commenced within two years after the cause of action accrued, and

Opinion and Order, that the three-year limitations period applies, the allegations related to uncompensated work occurred in 2010.  (Am. Compl. ¶ 16.)  Plaintiff did not institute the present action until May of 2014.  Accordingly, Plaintiff's FLSA claim is time-barred and is therefore dismissed with prejudice.

**F.      FMLA Claims**

Plaintiff also seeks to state a claim under the FMLA, alleging that she was improperly denied FMLA leave when she requested a reduction in hours to care for her son in October 2010 and that she was improperly denied a restoration of hours in November 2010.  (Am. Compl. ¶¶ 16, 19, 22-25.)  Plaintiff also alleges that as a result of "the hostile work environment" in which she was forced to work and the "severe emotional toll" it took on her, she requested FMLA leave on October 27, 2011.  (*Id.* ¶ 64.)  Genesee ISD denied Plaintiff's request for FMLA leave, concluding that she "had not worked the required 1,250 hours to qualify" for it. (*Id.* ¶¶ 65-67.)  These allegations are properly considered under the "'entitlement' or 'interference' theory arising from 29 U.S.C. § 2625(a)(1)[.]" *Hodve v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).

Defendants seek dismissal of this claim on the ground that Plaintiff's claims are barred by the statute's two-year limitations period.  29 U.S.C. § 2617(c)(1)

---

every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

("Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."). Defendants make no reference to the willful violation provision, which, like the FLSA, provides a three-year limitations period for willful FMLA violations. *Id.* § 2617(c)(2).

Any alleged FMLA violation occurring in 2010 is time-barred, even assuming that the three-year limitations period applies. With respect to the purported October 27, 2011 FMLA violation, there is no indication that the denial of FMLA leave was willful. Rather, Defendants calculated Plaintiff's hours and determined that she had not worked the requisite amount of hours to qualify for FMLA leave. Therefore, the two-year limitations period applies. Applying the applicable limitations period, Plaintiff's claim is time-barred unless Plaintiff is entitled to equitable tolling or some other extension of the limitations period. *See, e.g.*, 29 C.F.R. § 825.305(c) (regulations providing for an extension of time for purposes of saving an otherwise untimely claim where "it is not practicable under the particular circumstances despite the employee's diligent, good faith efforts").

To the extent that Plaintiff suggests that she was incapable of filing a complaint regarding the purported FMLA violations prior to the expiration of the statutory limitations period by virtue of an unsound mind, the Court is unable to credit the proffered reason for the delay. (Am. Compl. ¶ 8.) Not only does

27

Plaintiff not provide any explanation of the facts and circumstances underlying her unsound mind, but the Court notes that Plaintiff was capable of filing two charges of discrimination during the time that the FMLA limitations period was running. Because Plaintiff was capable of filing charges under Title VII, there is simply no reason to believe that an unsound mind rendered her incapable of filing charges related to the purported FMLA violation.

Lastly, to the extent Plaintiff's FMLA claim is predicated upon the denial of FMLA leave in November 2011, Plaintiff does not dispute that she had not worked the requisite amount of hours to qualify for protection under the FMLA.  Because she was not qualified, it follows that there could be no FMLA violation.

Accordingly, Plaintiff's FMLA claim is dismissed with prejudice due to the expiration of the statute of limitations and due to her acknowledgement that she was not qualified for such leave.

## IV.   CONCLUSION AND ORDER

Having thoroughly reviewed Plaintiff's pleading and Defendants' moving papers, the Court concludes that Plaintiff has failed to state a viable claim for relief on all of her claims but one.  The Court **GRANTS** Defendants' Rule 12(c) Motion in its entirety.  However, because this motion failed to seek dismissal of all causes of action pursued by Plaintiff, **PLAINTIFF'S RACE DISCRIMINATION CLAIM PURSUANT TO 42 U.S.C. § 1981 REMAINS**.

28

Plaintiff's causes of action arising under the following laws are

**DISMISSED WITH PREJUDICE**: Title VII (and the Fair Pay Act), the ELCRA,

the First Amendment, 42 U.S.C. §§ 1985 and 1986, the FLSA, and the FMLA.

The Court dismisses Plaintiff's ADA claim **WITHOUT PREJUDICE.**

     **IT IS SO ORDERED.**

Dated: November 10, 2014

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Copies to:

**Noelle Epps-Milton**
305 East Flint Park
Flint, MI 48505

**John L. Miller, Esq.**
**Timothy J. Mullins, Esq.**